1839.

Merritt and an-
other
*v.*
Lambert and
others.

that he pay the costs of such original bill and the proceed-
ings which have properly arisen under it.

————◆————

MERRITT AND ANOTHER *v.* LAMBERT AND OTHERS.

THE second section of the act incorporating the Farmers' Fire and
Loan Company, authorizing the company to purchase, on sales
made under decrees or judgments in their favor, is to be con-
strued as requiring the purchase to be made, and the deeds taken
directly in the name of the Company, or if by an officer that the
use for the Company should be expressed. The Company had
foreclosed a mortgage held by them, and the president became
the purchaser, and took the deed in his own name, but for the
use of the Company. A written contract of sale was entered into
by the Company with the complainants, on the 17th of March,
1835. It referred to the premises, as conveyed by a master in
chancery to E. T., (the president,) recorded, &c., and stated that
the Company had only an equitable title; no payment was made
until the 29th of April ensuing.

*Held*, that the purchaser had constructive notice that the deed to
T. was for the use of the Company, and was bound to notice that
deed, and the proceedings in chancery to foreclose, which showed
that as the Company was the purchaser, the mortgagor had a
right to redeem the premises.

*Held*, that a purchaser of lands from an incorporated Company, is
chargeable with notice of all the restrictions upon its power to
hold and convey lands contained in its charter.

The right given to the mortgagor was to redeem, so long as the
lands remain *in the hands of the corporation unsold.* A tender
and application to redeem had been made by the mortgagor to
the Company, and due notice given to the complainants after one
payment on the contract, and before its completion. *Held*, that
the term *unsold*, did not mean a contract of sale, but a consum-
mated sale. That this equitable right was to be protected like
every other, where notice was had of it before the delivery of
the deed. The notice arrested all further proceedings; the party
contracting, being protected in his previous *bona fide* payments.

Oct. 15.
Nov. 3.

THE bill in this cause was for the specific performance
of a written agreement for the exchange of certain real es-
tate. The defendant refused to perform his contract, on
the ground that a good title could not be made to the pre-

mises he was to take. All the objections are presented upon the pleadings and proofs.

*Mr. Edwards*, for complainants.

*Mr. Wallis*, for defendant.

THE ASSISTANT VICE-CHANCELLOR:—By the second section of the act of incorporation of the Farmers' Fire and Loan Company, it was made lawful for the corporation to purchase on sales made by virtue of judgments at law, or decrees in chancery, any real or personal estate, in payment, or towards satisfaction of any debt, or any interest of debt, and to hold the same until the same or any part could be converted into money; and by the third section, in all cases where the said corporation have become the purchasers of any real estate on which they have made loans, the mortgagors shall have the right of redemption of any such property, on payment of the principal, interest and costs, *so long as it remains in the hands of the corporation unsold.* The Company is also required to sell all real estate purchased under the act, within five years after it acquires the same.

In my opinion, it was the plain intention of the legislature that the corporation should make the purchase in its own name, or at least, when in the name of some person for its use, the deed should express the trust. Since the Revised Statutes, that would be the same thing as a direct conveyance, unless the provisions as to resulting trusts interfere, which will be afterwards noticed.

If the Company could be permitted to employ others to purchase, upon a secret engagement to hold for its use, the mortgagor's right would depend upon the accidental detection of the trust, or upon the risk of a bill of discovery; and the Company, in most cases, could effectually destroy the privilege of redemption.

In this case, it is sworn by Mr. Edwards, the mortgagor, that he never knew of the purchase being on behalf of the Company, until about three weeks before the tender. Now,

suppose that the contract with the complainants, had been consummated by a deed and payment, before the application to redeem, or the acquisition of the information, and Tibbitts had personally conveyed to them; the right given by the statute would have been destroyed by a proceeding contrary to its whole spirit and equity. In such a case, I cannot doubt that the Company would be held responsible for any surplus; but the purchaser, if untouched by notice, would hold the land.

It is, in my judgment, the leading question in the cause, whether the complainants are unaffected with notice of the rights of Edwards.

On the 17th of March, 1835, they contract with the Company for the purchase of the lands. The written agreement then entered into, admits that only the equitable title was in the Company, and they agree to convey, within a reasonable time after obtaining the legal title. It also refers to the premises as conveyed by Elijah Ford, master in chancery, to Elisha Tibbitts, by deed dated the 2d of September, 1834, recorded in, &c.

It is to be observed, that no payment was made until the 29th of April ensuing the date of the contract. Then the complainants, before they paid a cent, had distinct notice that the title was to come through a deed of a master in chancery to Tibbitts, and notice of the date and record of that deed. That deed would have apprized them that the sale was made in a suit of foreclosure by the Company, and against Ogden Edwards and others; and the decree or other proceedings would show that Ogden Edwards was the mortgagor, upon a mortgage given to the Company. The 19th section of the charter has declared, that the act is to be deemed a public act. It is doubted by Mr. Sugden, whether such a provision amounts to more than to cause it to be judicially noticed, instead of being specially pleaded, or can amount to notice of itself. (*On Vendors*, 280. He cites *Hesse* v. *Stevenson*, 3 *Bos. & Puller*, 578.) That case only decided, that the declaration in an act of parliament, that a statute in its nature private, should be a public act, could not enable the party

to make a better title than he could before the act. But, in my opinion, a party dealing directly with an insurance company for a purchase of real estate, to be conveyed by it, must be assumed to know the extent of its corporate powers as to such estate. Thus, as strong a case of constructive notice by means of written instruments and traceable public records is made out, as the books can exhibit; and this before a cent had been paid under the agreement. (See *Moore* v. *Bennet*, 2 *Ch. Ca.* 246. *Plumb* v. *Fluitt*, 2 *Anstr.* 246. *Coppin* v. *Fernyhough*, 2 *Br. C. R.* 291. *Marpay* v. *Ackland*, 3 *Russell*, 273. *Hamilton* v. *Royse*, 2 *Sch. & Lef.* 326. *Willis* v. *Bucker*, 2 *Binney*, 466. *Fansworth* v. *Childs*, 4 *Mass.* 637.) In the last cited case, the court adopt the rule laid down by the Chief Baron in *Plumb* v. *Fluitt*, that constructive notice from possession of deeds, is such notice as may not be controverted.

1839.
Merritt and another
v.
Lambert and others.

If then the right to redeem was a mere equitable right, there was notice of its existence. It could not be any but an equitable right previous to the tender, whatever it was subsequently. If there was a legal estate vested in Edwards by the tender, this suit must be at an end, for no title can possibly be made. It is needless, in such case, to advert to the right under the covenants or otherwise, to recover the moneys paid before the tender.

Upon this question of the character of Edwards' right after the tender, we have the opposing opinions of the Chancellor, and of the Supreme Court. The former considers that payment alone can revest the legal title; the latter, that a tender is sufficient.

I presume not to express an opinion, where my duty does not demand it, upon the rival judgments of such high authorities. I shall pursue the examination of the case, upon the supposition most favorable to the complainants, viz., that the right of Edwards was a purely equitable right, even after the tender.

In thus regarding it, I have the benefit of the proofs in the cause, showing many important facts not before the Chancellor, upon the appeal from the order for a receiver. Among these the ignorance of Edwards that the purchase

was made for the Company, until two or three weeks before his tender, the transactions with the master as to payment, and some facts relating to the notice.

Admitting that the complainants had that full constructive notice of the right of Edwards, which I have mentioned, the question still is, what was that right? It was to redeem, while the lands remained in the hands of the Company unsold. It strikes me, that a naked agreement to sell, cannot be deemed a sale within the scope of the statute. I consider that the true construction of the phrase, is to be found in the legal meaning of a purchase. The lands remain unsold until there is a legal purchaser. Sale and purchase are convertible terms. Seller and purchaser are equally so. Now, perhaps there is not a doctrine of the court more thoroughly established than this, that no one is a purchaser for valuable consideration, so as to enable him to defeat an equitable right, of which he has notice, unless he has obtained his conveyance, and paid his whole purchase money before such notice. That he had not notice at the time of the treaty or contract, is immaterial, if he receives notice before its consummation. Couple this rule with another, that he is protected for all payments made previously to receiving he notice, and a doctrine is obtained, as strongly marked by justice, as it is irresistibly proven by authority. (*Hardingham* v. *Nicholls*, 3 *Atk.* 304. *Maitland* v. *Wilson*, *Ibid.* 814. *Story* v. *Windsor*, 2 *Atk.* 630. *Tourville* v. t*Naish*, 3 *P. Wms.* 307. *Jones* v. *Stanley*, 2 *Eq. Ca. Ab.* 685. *Attorney General* v. *Gowen, Ibid. Jewett* v. *Palmer*, 7 *Johns. C. R.* 65. *Ellis* v. *Tousey*, 1 *Paige*, 280. *Hunter* v. *Simrall*, 5 *Little*, 62. *Blair* v. *Owles*, 1 *Mumf.* 38. *Boswell* v. *Buchanan*, 3 *Leigh*, 365. *Nantz* v. *McPherson*, 7 *Monroe*, 599. *Frost* v. *Beekman*, 1 *Johns. C. R.* 298.) In the language of Chancellor Kent, in the last cited case, "as soon as notice is received, it "arrests all further proceedings towards the completion of "the purchase and payment, and if persisted in, they are "held to be in fraud of the equitable incumbrance."

If, then, I am wrong as to the constructive notice I have

considered to exist in this case, still, long before the com-
plainants consummated their purchase by delivering the
mortgages and taking the .deed, the tender had actually
been made to the Company by Edwards, and the com-
plainants were apprized of it in writing. It seems to me
that they were bound to stop short; that either, protection
would have been given them against Edwards for prior
payment, or redress against the Company. But it does
press strongly upon my mind that their perseverance in
the fulfilment of the contract was a coalition with the
Company to defeat a most palpable and chartered equity.

In the opinion of his honor the chancellor, he observes,
that if Tibbitts had taken the conveyance from the master
with the knowledge and consent of the Company, no use
or trust could result in their favor, but the title would vest
in Tibbitts, referring to the statute 1 *R. S.* 728, § 51. 53.
He also observes, that the purchase money was paid out of
the funds of the Company.

It appears from the evidence of the master, that neither
Tibbitts nor the Company paid any money at the time of
sale, or upon obtaining the deed. But the master received
from the Company a general receipt including the amount
of the purchase by Tibbitts. It perhaps may admit of
doubt, whether such a case is within the provision referred
to as between Tibbitts and the Company. But certainly
it cannot be construed so as to extinguish the right of a
mortgagor entitled by the charter to redeem, to trace the
actual fact of the purchase, and establish the trust or
agency. The 52d section of the statute saves the rights
of creditors of the party advancing the money, and the
right in question may be treated as within its equity.

It remains to inquire, whether Edwards has done
any thing to waive his remedy in this court for his equit-
able right. The statute limiting the time for proceeding
does not preclude him. His action at law may be aban-
doned or fail, and its institution could not prejudice him.
I consider that he could at any time file a bill against the
Company and the Merritts, and have an effectual relief by
a conveyance from all, upon payment of the money. In

this mode entire justice would be done. The Company would receive their whole demand, and be compelled to repay the advances of the Merritts.

There are some other objections taken which I do not think it necessary to discuss. The bill must be dismissed, but after the sanction which the claim has received from the highest authority, I cannot allow costs.